UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

ERICA DOLAN,                                                    Case No.

                              Plaintiff,

                                                               **COMPLAINT**

              - against -

                                                               **PLAINTIFF DEMANDS**
TRIPLE A SUPPLIES, INC., and                                   **A TRIAL BY JURY**
USHER SCHWARTZ, and
TIMOTHY IRIZARRY, *individually*.

                              Defendants.

-----------------------------------------------------------X

Plaintiff, ERICA DOLAN ("Plaintiff" or "Ms. Dolan"), by her attorneys, FILIPPATOS

PLLC, hereby complains of Defendants Triple A Supplies, Inc., (the " Company," "TASI," or

Defendant), Usher Schwartz ("Mr. Schwartz" or Defendant), and Timothy Irizarry ("Mr. Irizarry"

or Defendant) upon personal knowledge, as well as information and belief, by alleging and

averring as follows:

## NATURE OF THE CASE

1. This is a case in which Defendants systematically and unlawfully discriminated and
   retaliated against Plaintiff, a highly accomplished female employee, they had twice hired
   over the course of approximately 7 years, simply because she is a woman and became
   pregnant and sought to enforce her statutory rights.

2. Plaintiff brings this action alleging that Defendants have violated the Family and Medical
   Leave Act, 29 U.S.C. §§ 2601, *et seq*. ("FMLA"); therefore, Plaintiff seeks damages to
   redress the injuries she has suffered as a result of: (a) interference with her rights under the
   FMLA; and (b) retaliation and discrimination for requesting leave under the FMLA.

1

3. Contemporaneous with the filing of this action, Plaintiff has timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and, upon receiving a Notice of Right to Sue, intends to amend this action to assert corollary claims for gender/sex discrimination, harassment, and retaliation, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII"), and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 et seq.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is proper under 29 U.S.C. §§ 2617 and 28 U.S.C. §§ 1331.

2. The Court has supplemental jurisdiction over the claims that Plaintiff has brought under state law pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), as Defendants reside within the Southern District of New York, or a substantial part of the acts complained of herein occurred therein.

## PARTIES

4. At all times relevant hereto, Plaintiff is a resident of the State of New York and County of Orange.

5. At all times relevant hereto, Defendant was and is a domestic for-profit corporation duly existing pursuant to, and by virtue of the laws of the State of New York and maintains its principal place of business at 50 Jeanne Drive, Newburgh, NY 12550.

6. Defendant is a distributor of janitorial cleaning supplies and equipment as well as disposable paper, plastic, and foodservice products, which, upon information and belief,

employs over 50 individuals on a full-time or full-time equivalent basis and thus is subject to all statutes upon which Plaintiff is proceeding herein.

7. At all times relevant hereto, Plaintiff was an employee of Defendants.

8. At all times relevant hereto, Defendant Schwartz was an employee of Defendant TASI, holding the position of Director of Finance.

9. At all times relevant hereto, Defendant Schwartz was Plaintiff's supervisor and had supervisory authority over Plaintiff.

10. At all times relevant hereto, Defendant Irizarry was an employee of Defendant TASI holding the position of Human Resources ("HR") Manager.

11. At all times relevant hereto, Defendant Irizarry was Plaintiff's supervisor and had supervisory authority over Plaintiff

12. At all times relevant hereto, Defendant Schwartz and Defendant Irizarry had the authority to hire, terminate, and/or affect the terms and conditions of Plaintiff's employment. Defendant TASI, Defendant Schwartz, and Defendant Irizarry are collectively referred to herein as "Defendants."

## MATERIAL FACTS

### I. Re-hired By Defendant Following a Previous Period of Employment, Plaintiff Becomes Subject to Sexual Harassment Soon After Rejoining TASI

13. Plaintiff previously worked for Defendant TASI until she went on an extended maternity leave. When she rejoined the Company as the Accounts Payable Specialist, on or about February 2, 2020, Ms. Dolan was made the point of contact for vendors and the company, ensuring vendors were paid for the products and services rendered. She was responsible for managing the processing of invoices, reconciling vendor statements, responding to

vendor inquiries, and auditing reports. A little over a month after her return to Defendant TASI, and due to her exemplary performance, Plaintiff was promoted again to Bookkeeper, where she assumed exclusive responsibility for strategic implementation of the following key functions: (a) prepare billing worksheets and monthly invoices; (b) ensure payment of vendor bills; (c) maintain monthly journal entries; (d) reconcile vendor statements and invoices in the OnCare Purchasing System; (e) manage customer account; (f) enter labor distributions; (g) track monthly employee expenses; (h) assist with month-end closing; (i) reconcile audited financial statements; and (j) post monthly standard entries.

14. Specifically, Ms. Dolan was hired by Defendant Irizarry, HR Manager, on or about February 2, 2020, and was presented with a sizeable portfolio commensurate to her acknowledged skillset and extensive experience. Thus, given her demonstrated ability to implement orderly systems and her cross-functional leadership skills, Plaintiff, once again, achieved success at the Company and was thrilled to have reached what she thought was the pinnacle of her career in accounting by landing a position, and then steadily rising, at a venerable institution such as TASI, which offered her security, as well as the opportunity to design and build trailblazing initiatives. Ms. Dolan was hired by the Company, at an annual salary of $47,000; at the time of her termination by Defendant in March 2021, was earning approximately $48,000.

15. Ms. Dolan's re-assimilation at the Company went relatively smoothly during her first six months, although she did have to endure numerous inappropriate flirtatious comments made by her supervisor, Defendant Schwartz, about her appearance. Then, things began to change drastically for the worse, in July 2020, however, when Defendant Schwartz ramped up his inappropriate behavior to the point of sexually harassing Ms. Dolan overtly.

16. On July 8, 2020, Defendant Schwartz emailed Ms. Dolan in response to her setting up a vendor payment in QuickBooks with multiple kiss emojis.  On July 14, 2020, Defendant Schwartz emailed Ms. Dolan about her completing a reconciliation and stated "Amazing" with a kiss emoji.  On July 15 and July 16, 2020, Defendant Schwartz again sent Plaintiff texts with kiss emojis.  On July 19, 2020, Defendant Schwartz sent a text message with a heart emoji to Ms. Dolan inquiring if she was going swimming and whether he could join her.  Specifically, he wrote: "The weather today is perfect for a good [swim emoji], aren't you invited today? If yes would you allow me to join? [heart face emoji] [crazy face emoji]".

17. On July 20, 2020, Defendant Schwartz responded to an email from Ms. Dolan with "thanks a million" and a kiss emoji.  Subsequently, in the same email chain over the next few days, Defendant Schwartz asked Plaintiff to complete several additional tasks, and when she replied to tell him that she did so, he responded with multiple heart and kiss emojis.  In addition, on July 20, 2020, Ms. Dolan texted Defendant Schwartz that she was having difficulty accessing the Company's server from her home computer and Defendant Schwartz responded that he would deliver an office laptop, again using several heart emojis.  When Defendant Schwartz dropped off the laptop, Ms. Dolan, understandably, felt very uncomfortable.

18. On July 21, 2020, in response to an email from Plaintiff, Defendant Schwartz replied with the word "beautiful" and a kiss emoji.  On July 22, 2020, Defendant Schwartz emailed Ms. Dolan asking to review something and included a kiss emoji.  On July 23, 2020, Defendant Schwartz sent Ms. Dolan a text about one of their co-workers and ended the text with more kiss emojis.  On July 26, 2020, Defendant Schwartz texted Ms. Dolan on a Sunday,

addressing her as "hon," to discuss a fellow co-worker and ended the text with kiss and heart emojis. On July 27, 2020, Defendant Schwartz responded to an email from Plaintiff regarding a payment and included a kiss emoji. Later, on July 27, 2020, Defendant Schwartz responded to another email from Ms. Dolan, apologizing that she could not be in the office by stating "don't worry. I can join you at home and work together from there," adding a kiss emoji.

19. On July 28, 2020, Defendant Schwartz sent more kiss emojis via text to Ms. Dolan, declaring "I love you," before wondering out loud whether it was an appropriate thing to say that. Specifically, he said: "I love you" in a text to Ms. Dolan: "I'm just trying to pay you back when I can… [kiss emoji]. Since most of the time you're helping me [crazy face emoji] love you!" In addition, he wrote, in momentary self-consciousness: "Sorry for the expression, hope it wasn't inappropriate …." Later that day, Defendant Schwartz continued this text exchange with Ms. Dolan by asking whether she needed his help or wanted "his company," suggesting that he could come visit her at home, accompanied by numerous heart emojis. On July 29, 2020, Defendant Schwartz suggested to Ms. Dolan that they review things together in person and ended his text with a kiss emoji.

20. On July 30, 2020, Defendant Schwartz texted Ms. Dolan about her COVID-19 test result and, once again, ended his text with a kiss emoji. On July 31, 2020, Defendant Schwartz texted Ms. Dolan that he "need[ed]" her and ended his text with a heart face emoji. Later, on July 31, 2020, he replied to an email from Ms. Dolan regarding a vendor payment by saying "thank you so much!! You are the best!!" followed by four kiss emojis. On August 3, 2020, Defendant Schwartz replied to an email from Ms. Dolan asking what else she could do to help by saying "thank you for checking in … I very much appreciate that!"

followed by several kiss emojis; Mr. Schwartz ended this email by declaring: "Can't wait to see you back in the office like normal before," accompanied by heart and kiss emojis.

21. One of the most egregious incidents of sexual harassment by Defendant Schwartz against Plaintiff occurred sometime between August 4 and August 7, 2020, when Orange County, New York, was hit by a powerful hurricane and lost power. Ms. Dolan and Emily Hodge ("Ms. Hodge"), her co-worker and roommate at the time, were working from home due to COVID-19 when they were on a conference call with Defendant Schwartz and shared that not only did they not have electricity but had also lost water service as well. He responded point blank: "you should come shower at my house." Upon hearing this blatantly inappropriate proposition, both Ms. Dolan and Ms. Hodge were shocked, as was Ms. Dolan's fiancé, Michael Smith ("Mr. Smith"), who also overheard Defendant Schwartz coming on to his fiancé.

**II. Ms. Dolan Notifies Defendant TASI that She Was Under Doctor's Orders to Work from Home Because of Her High-Risk Pregnancy, but Nevertheless is Subjected to Constant Pressure by Defendant Schwartz to Return to the Office**

22. On September 1, 2020, Ms. Dolan informed TASI that she was around five weeks pregnant. Thereafter, on October 19, 2020, Ms. Dolan asked for the reasonable accommodation of working remotely because of her high-risk pregnancy, at which point she was permitted to do so by Defendant Irizarry.

23. On October 16, 2020, Ms. Dolan's physician confirmed in writing that she was under treatment for a "high-risk pregnancy," and was under doctor's orders to work from home until further notice. On October 19, 2020, Plaintiff requested to work from home per the note from her doctor and she was approved to do so on that same day by Defendant Irizarry.

7

Immediately thereafter, Ms. Dolan emailed Defendant Schwartz to discuss how the day-to-day operations would be handled remotely, but she did not receive an email in response.

24. On October 23, 2020, Defendant Schwartz began asking Plaintiff when she would return to work in the office even after she was approved to work from home due to her high-risk pregnancy.  On October 26, 2020, Ms. Dolan reported to HR that she was being subjected to inappropriate pressure and was told it would be addressed.  In the interim, Defendant Schwartz again inquired when Ms. Dolan would return to the office and Defendant Irizarry assured her that he would speak to Defendant Schwartz on October 28, 2020.

25. While working remotely, Ms. Dolan, as an employee of TASI, was governed by the following policies and procedures:

- All employees are expected to clock in and out from their shift on their desktop computer, laptop, or cell phone.
- All managers must ensure that all employees have the necessary technology and tools to ensure productivity at home.
- Two check-ins must be communicated between employee and management for each day. One check-in before noon and one check-in after noon. These check-ins must be face-to-face on Zoom, Skype, Microsoft Teams, etc.
- Establish daily and measurable performance goals and expectations.
- Acknowledge any concerns or potential challenges of working virtually and ways to address these issues.
- Check in frequently to discuss how work will be delegated, completed, and reviewed.
- Microsoft Teams must be downloaded onto each employee's laptop to keep communication open while working remotely.
- Employees must contact their manager when they are taking their 30-minute lunch break or one of their 10-minute breaks.
- Establish ground rules regarding work hours, interruptions, and background noise.
- Be clear on priorities and focus on expectations.
- Tasks and responsibilities need to be agreed upon as a measure of each employee's success.

- Ensure that project statuses and completion dates are communicated and delivered in a timely manner.
- Employees are expected to promptly answer all calls and emails.
- Be sure each employee can disengage from work to have quality personal time; be sure each employee is able to disengage from personal time to focus on work.

26. Nevertheless, during this period, Defendant Schwartz repeatedly told Plaintiff that he did not believe that pregnant women could get COVID-19, and that he wanted to speak with her physician as they "didn't know what they were talking about."

**III. Ms. Dolan is Shut Out and Demeaned by Defendant Schwartz Soon After She Expresses Concerns About Exposure to COVID-19 – which Defendant Schwartz Mocks –Before Rebuffing His Sexual Advances and Complaining About His Inappropriate Conduct to Human Resources**

27. On October 7, 2020, unable to endure the hostile work environment created by Defendant Schwartz any longer, Plaintiff began to report the sexual harassment she was suffering to Sara Craft ("Ms. Craft"), HR Assistant. Although she received no affirmative indication that her complaints would be addressed, Ms. Dolan continued to send emails to Ms. Craft and Defendant Irizarry whenever Defendant Schwartz engaged in additional inappropriate conduct. Specifically, Ms. Dolan subsequently complained about Defendant Schwartz's inappropriate behavior to Ms. Craft and Defendant Irizarry on October 26, 2020, and November 12, 2020. On or about October 27, 2020, Defendant Irizarry confirmed to Ms. Dolan that both he and Jerry Gervasio ("Mr. Gervasio"), the Chief Operating Officer, had spoken to Defendant Schwartz about her concerns.

28. Significantly, in October 2020, immediately after she first complained about sexual harassment and pregnancy discrimination to HR, a sea-change in Defendant Schwartz's demeanor and attitude towards Ms. Dolan occurred. In juxtaposition, while before, Defendant Schwartz was cooperative with Ms. Dolan, he became combative; whereas

previously Defendant Schwartz was guiding and proactive regarding Plaintiff's concerns, he is now dismissive and reactive; once responsive towards Ms. Dolan, Defendant Schwartz is now neglectful of her; prior to her complaints of sexual harassment against him, Defendant Schwartz was – albeit sometimes inappropriately – complementary and appreciative of Ms. Dolan, but now he unfairly criticizes and blames her.

29. For example, on January 28, 2021, Ms. Dolan emailed Defendant Irizarry and Ms. Craft asking if Defendant Schwartz was in today.  In her email to them, Plaintiff Dolan stated that she had "tried to call him 3 times" and that she had "sent several emails" without response.  In addition, Defendant Schwartz's voicemail was full, so that Ms. Dolan could not leave him a message.  To Ms. Dolan's astonishment, Defendant Irizarry replied to her email by saying that "Usher is in today."

30. In another instance, on February 1, 2021, Plaintiff Dolan emailed Defendant Schwartz asking him for guidance regarding an account issue.  Ms. Dolan followed up with him on February 9, 2020 and had to send him a second reminder on February 15, 2020.

31. One highly important matter as regards Ms. Dolan that was ignored by Defendant Schwartz was the intercompany deadline in January 2021, which was being delayed by Joel Farkas ("Mr. Farkas"), TASI Fiscal Analyst.  This deadline was established because of the Performance Improvement Plan ("PIP") on which Ms. Dolan was placed based on Defendant Schwartz's erroneous claim that Ms. Dolan had missed deadlines in October 2020.  On February 3, 2021, Ms. Dolan asked Defendant Schwartz for advice as she wanted to make sure she adhered to the deadlines.  Ms. Dolan followed up with Defendant Schwartz the next day, to which he briefly replied: "That's acceptable, since it's not depending on you."  Ms. Dolan sent him another email on February 8, 2021, stating that

Mr. Farkas still did not enter all the intercompany deadlines on his end. In her email, Ms. Dolan wrote: "Any assistance you can offer in getting this to move quicker is appreciated." The same day, Defendant Schwartz wrote back, stating that he is aware of the situation but that he was "busy with a lot of other stuff."

32. Understandably, on February 15, 2021, Ms. Dolan expressed her concerns to HR about the unlawful retaliation directed against her by Defendant Schwartz. Specifically, Ms. Dolan explained that the communication with Defendant Schwartz has been very difficult in that phone calls to him are often met with no answer, while his voicemail box remained full so that no message could be left for him. Moreover, Defendant Schwartz often does not respond to emails sent by Ms. Dolan, which causes Ms. Dolan's questions on behalf of vendors to go unanswered and vendors to feel ignored. In this regard, Ms. Dolan has informed HR that she regularly sends reminder emails to Defendant Schwartz to no avail. Moreover, even when Ms. Dolan does get through to Defendant Mr. Schwartz, he usually tells her that he is "too busy with other things." Indeed, even when he is available to speak over the phone, he rushes Ms. Dolan off the phone with hardly a conversation taking place and not much getting accomplished. Additionally, TASI's work from home protocol requires Ms. Dolan to check in with her supervisor in the morning, and again in the afternoon, before the end of the workday. While Ms. Dolan always does so, most days this check-in does not occur due to Defendant Schwartz's lack of availability.

**IV. Shortly After She Complained to HR About the Sexual Harassment She Had Suffered from Defendant Schwartz, Ms. Dolan was Retaliatorily Ostracized and Criticized by Him, to the Point of Being Subjected to an Unfounded PIP that HR Sanctioned While Doing Nothing to Remediate the Hostile Work Environment Created by Defendant Schwartz**

33. Regrettably, on November 17, 2020, Ms. Dolan was issued a PIP. The PIP was supposed to last until December 17, 2020, but to this day, no one at TASI has contacted Ms. Dolan

to inform her as to the results of the PIP.  When she received the PIP, Ms. Dolan attempted to clarify certain issues addressed in the PIP -- which seemed, in large part, to be derived from an inapplicable template – but she was never provided a satisfactory explanation from anyone at TASI.  Moreover, when she was given the PIP, Ms. Dolan was told that if there was no improvement, she would be terminated immediately.

34. Specifically, the PIP contained the following nonsensical, unfounded, and unidentified assertions about Plaintiff's performance: (1) failure to meet deadlines; and (2) multiple errors.

35. While Ms. Dolan attempted repeatedly – specifically on December 3, December 7, and December 10, 2020, as well as February 3, 2021 -- to gain understanding and clarification about the PIP from Mr. Irizarry, Mr. Schwartz, and Mr. Gervasio, but none was ever forthcoming.

**V. Plaintiff Requests Protected FMLA Leave, and in Retaliation for Her Formal Complaints Regarding Defendant Schwartz's Unlawful Conduct, and Request For Protected Leave, Defendants Took No Corrective Action and Instead Terminated Plaintiff's Employment**

36. On December 29, 2020, at 1:26pm, Defendant Schwartz inexplicably demanded that Ms. Dolan bring documents to the office for an "original signature."  In his email, Defendant Schwartz wrote: "I do understand your concerns, and I respect your following your doctor's orders as it is for your health. However, I need to have those billables in my possession with the signatures on it, in order to finalize them."  Ms. Dolan said the documents she had were not originals and Mr. Schwartz knew they were not.  Nevertheless, because Ms. Dolan was afraid to be called insubordinate, she complied by having a colleague meet her at her car to receive the documents.

37. The next morning, on December 30, 2020, at 9:14am, Ms. Dolan had a long conversation with her HR Manager about Defendant Schwartz whereby HR admitted wrongful conduct by Mr. Schwartz. However, nothing was conclusively addressed, and nothing was said to her subsequently regarding the situation with Defendant Schwartz.

38. On January 28, 2021, as previously mentioned, Defendant Schwartz was non-responsive regarding work tasks of Ms. Dolan; Ms. Dolan emailed Mr. Irizarry and Ms. Craft asking if Defendant Schwartz was in today, as (as she stated) she had "tried to call him 3 times" and that she had "sent several emails" without response. Defendant Schwartz's voicemail was also full, so that Ms. Dolan could not leave him a message (a gular occurrence). To Ms. Dolan's astonishment, Mr. Irizarry replied to her email by saying that "Usher is in today."

39. Again, on February 1, 2021, Ms. Dolan emailed Mr. Schwartz asking him for guidance regarding an account issue. Ms. Dolan followed up with him on February 9, 2021, and had to send him a second reminder on February 15, 2021, but never received any reply from Defendant Schwartz.

40. Also previously mentioned, another important matter that was ignored by Defendant Schwartz was the intercompany deadline in January 2021, which was being delayed by Joel Farkas ("Mr. Farkas"), the Company's Fiscal Analyst. This deadline was established because of the Performance Improvement Plan ("PIP") on which Ms. Dolan was placed based on Defendant Schwartz's erroneous claim that Ms. Dolan had missed deadlines in October 2020. On February 3, 2021, Plaintiff asked Mr. Schwartz for advice as she wanted to make sure she adhered to the deadlines. Ms. Dolan followed up with Defendant Schwartz the next day, to which he briefly replied: "That's acceptable, since it's not

depending on you." Ms. Dolan sent him another email on February 8, 2021, stating that Mr. Farkas still did not enter all the intercompany on his end. In her email, Plaintiff wrote: "Any assistance you can offer in getting this to move quicker is appreciated." The same day, Defendant Schwartz wrote back, stating that he is aware of the situation but that he was "busy with a lot of other stuff."

41. Troublingly, during the week of February 15, 2021, Ms. Dolan had a text exchange with one of her coworkers who informed Ms. Dolan that the coworker had recently been directed by Defendant Schwartz, with HR's approval, to begin training to "help" in Ms. Dolan's department, specifically to assist Defendant Schwartz as Ms. Dolan had. On February 23, 2021, the coworker told Ms. Dolan that the coworker had been directed to immediately begin training on aspects of the job that Ms. Dolan performs. Later that same day, Ms. Dolan reported to HR that Defendant Schwartz had just asked her to produce irregular invoices for a particular customer. The "invoices" Defendant Schwartz wanted would be created in Excel as alternatives to the ones that already existed in QuickBooks for the month of January. Ms. Dolan immediately informed Defendant Schwartz that she was not comfortable doing so as she did not have the legitimate backup to create the parallel invoices he was seeking. Defendant Schwartz insisted that Ms. Dolan use the information that was in QuickBooks for the initial January billing, and then the "true-up" January billing, because the information was also available on the billing worksheet used each month. However, when Plaintiff examined the billing worksheet, she discovered that it did not comport with the information in QuickBooks. Ms. Dolan then repeated to Defendant Schwartz that she was uncomfortable creating these "invoices" because she did not have the correct information to input. In response, Defendant Schwartz stated to Ms. Dolan that

"he was losing his patience explaining," and then yelled at Ms. Dolan so loudly and rudely that her colleague, Justine Hamilton ("Ms. Hamilton"), who was in the office and heard Defendant Schwartz, frantically texted Ms. Dolan to ask if she was "alright."

42. Ms. Dolan's PIP was to end on December 17, 2020.  Troublingly, neither Defendant Irizarry, Mr. Gervasio, nor Defendant Schwartz confirmed anything regarding the PIP to Ms. Dolan as of that date, or thereafter, even after Ms. Dolan requested the status of the PIP on February 23, 2021.

43. Similarly, Ms. Dolan also asked for PFL and FMLA leave on February 19, 2021, and submitted the required documentation to Shelter Point Life Insurance Company, as proscribed by Defendant TASI.

44. A few days prior, on February 15, 2021, Plaintiff expressed concerns to HR about the unlawful retaliation by Defendant Schwartz.  Specifically, Ms. Dolan explained that the communication with Defendant Schwartz had been very difficult in that phone calls to him were often met with no answer, while his voicemail box remained full so that no message could be left for him.  Moreover, Defendant Schwartz often did not respond to emails sent by Ms. Dolan, which caused Ms. Dolan's questions on behalf of vendors to go unanswered and vendors to feel ignored.  In this regard, Ms. Dolan informed HR that she would regularly send reminder emails to Defendant Schwartz to no avail.

45. Having heard absolutely nothing from the Company regarding her repeated complaints regarding discrimination, and request for protected FMLA leave submitted on February 19, 2021, Ms. Dolan was summarily terminated by the Company via telephone on March 25, 2021.

46. To add insult to injury, although Plaintiff's termination was covered up under the guise of a reduction in force/position elimination by Defendant TASI, coincidentally, her position was posted on multiple job sites both shortly before, and shortly after, her termination.

47. Further, as a direct result of the egregious conduct to which she was subjected, Ms. Dolan sought the assistance of a therapist, to deal with her emotional trauma. Specifically, Ms. Dolan has been diagnosed with PTSD, Major Depression, and Generalized Anxiety, because of the unlawful treatment she experienced from Defendants in the workplace. Moreover, Plaintiff has been treated with medication in conjunction with the diagnoses previously mentioned hereinabove.

48. As a result of the foregoing, Plaintiff has been unlawfully discriminated and retaliated against, humiliated, and degraded, and as a result, suffered loss of rights, emotional distress, loss of income and earnings.

49. As a result of Defendants' actions, Plaintiff feels extremely degraded, victimized, embarrassed, and emotionally distressed.

50. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, as well as future pecuniary losses, emotional pain, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

51. Because Defendants' conduct has been malicious, willful, outrageous, and done with full knowledge of the legion of law to the contrary, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

**FIRST CAUSE OF ACTION
FOR INTERFERENCE AND RETALIATION
UNDER THE FAMILY AND MEDICAL LEAVE ACT
(Not Against Individual Defendant)**

52. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

53. Section 2612(D) of the Family Medical Leave Act, states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period … Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

54. Section 2615(a) of the Family Medical Leave Act, states in pertinent part:

Interference with rights.

(1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

55. Upon information and belief, Plaintiff and Defendant TASI are both subject to the FMLA, respectively, as eligible employee and covered employer, as Plaintiff is a full-time employee who has worked for Defendant TASI for over one (1) year. Additionally, Defendant TASI employees over 50 employees within a 75-mile radius.

56. Defendant TASI interfered with Plaintiff's rights under the FMLA by not providing the required documentation upon its knowledge that she would be needing to use leave under the FMLA; for not notifying Plaintiff that she could use leave for her pregnancy.

57. As such, Plaintiff has been damaged as set forth herein.

## SECOND CAUSE OF ACTION
## FOR DISCRIMINATION AND RETLIATION
## UNDER NEW YORK STATE LAW
### (Against All Defendants)

58. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

59. Executive Law § 296 provides that:

> It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

60. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex (female, pregnancy).

61. Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

62. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her opposition to the unlawful employment practices of the Defendants.

## THIRD CAUSE OF ACTION
## AIDING AND ABETTING
## UNDER NEW YORK STATE LAW
### (Against Defendants Schwartz and Defendant Irizarry)

63. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

18

64. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

65. Defendants Schwartz and Irizarry engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## FOURTH CAUSE OF ACTION
## Intentional Infliction of Emotional Distress as
## (Against All Defendants)

66. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

67. Defendants and/or defendants' agents, servants and/or employees, knew or reasonably should have known that the failure to properly hire, advise, supervise Defendant Schwartz would and did proximately result in physical and emotional distress to Plaintiff.

68. Defendants and/or Defendant's agents, servants and/or employees knew or reasonably should have known that the sexual harassment and other improper conduct by Defendant Schwartz, including, but not limited to creating an environment that allowed for sexual harassment, would and did proximately result in physical and emotional distress to Plaintiff.

69. Defendants had the power, ability, authority and duty to intervene with and/or stop the improper conduct that resulted in Plaintiff being sexually harassed by Defendant Mr. Schwartz.

70. The conduct of Defendant Schwartz as described herein was intentional, reckless, unwarranted, and without any just cause or provocation, and Defendants knew or should

19

have known that this conduct was without Plaintiff's consent.

71. Defendants committed the acts alleged herein maliciously, and oppressively with the wrongful intention of injuring Plaintiff from an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights, entitling Plaintiff to recover punitive damages in an amount to be proven at trial.

72. Defendant TASI as employer of the individual Defendant Schwartz are responsible for their wrongdoings under the doctrine of respondeat superior.

73. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### JURY DEMAND

74. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.    Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. seq.; the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 (Pub. L. No. 110-325) ("ADAA"); Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.*; and the New York State Human Rights Law, New York State Executive Law, §§ 296 et. seq., in that Defendants discriminated and retaliated against, Plaintiff on the basis of her gender (female, pregnancy) and caretaker status of her child who diagnosed with an actual or perceived disability (Autism);

B.    Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.     Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.     Awarding Plaintiff punitive damages;

E.     Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: White Plains, New York
       October 8, 2021

Parisis G. Filippatos
**FILIPPATOS PLLC**
*Attorneys for Plaintiff*
199 Main Street, Suite 800
White Plains, NY 10601
Tel/Fax No: 914-984-1111
pgf@filippatoslaw.com

By:     */s/ Parisis G. Filippatos*
        Parisis G. Filippatos (PF-1593)